JEREMIAH W. BALIK
1223 Wilshire Blvd., #777
Santa Monica, CA 90403
(424) 280-2981
(805) 642-7177
AngelsCamp3D@gmail.com
https://twitter.com/AppDrivenToys
In Pro Per

FILED

APR 22 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JEREMIAH W. BALIK,<br><br>          Plaintiff,<br><br>     vs.<br><br>TOY TALK, INC & MATTEL, INC<br><br>          Defendants, | Case No.: 15-cv-04556-JST<br><br>2ND AMENDED COMPLAINT<br><br>Date: June 15th, 2016<br>Time: 2:00 PM<br>Dept: Courtroom 9 19th Floor, Hon<br>Jon S. Tigar |

## JURISDICTION

1.   This court has jurisdiction under 28 U.S.C. § 1331/1367. Federal

Question Jurisdiction arises pursuant to 17 U.S.C. § 102, Conversion

Cal Civ **Code §3336,** and Diversity Jurisdiction 28 U.S. Code § 1332 -

The district courts shall have original jurisdiction of all civil

actions where the matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and is between—

(1) Citizens of different States - Amount demanded, $23,777,000

1

## VENUE

2. Venue is proper pursuant to 28 U.S.C. § 1391 because one of the Defendants lives in this district.

## PARTIES

3. Plaintiff, Jeremiah W. Balik, mailing address at 1223 Wilshire Blvd, #777, Santa Monica, CA 90403 (424) 280-2981 Resides in Santa Barbara, CA

4. Defendants reside at 1.) Toy Talk, Inc 74 Tehama Street, San Francisco, CA 94105 (415) 932-6292 Counsel for Toy Talk, James F. Valentine, Perkins Coie, LLP, 3150 Porter Drive, Palo Alto, CA 94304-1212 650-838-4300 JValentine@perkinscoie.com CHenderson@perkinscoie.com amanek@perkinscoie.com

5. Mattel - The registered office of the Company in the State of Delaware is located at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, in the County of New Castle. Counsel for Mattel, Lee John Papageorge, In House Counsel, Mattel, Inc, M/S M1-1518, 333 Continental Blvd, El Segundo, CA 90245-5012 (310) 252-4067 lee.papageorge@mattel.com

## CAUSE OF ACTION - CONVERSION

6. **First Cause of Action: CCP § 3336** The detriment caused by the wrongful conversion of personal property is presumed to be:

First—The value of the property at the time of the conversion with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and Second—A fair compensation for the time and money properly expended in pursuit of the property.

Intangible Property: The common law rule requiring tangible property has been modified by the courts, and conversion now applies to certain classes of intangibles that are represented by documents. The California Uniform Commercial Code imposes liability for the conversion of instruments. [Civ. Code, §3420] The definition of "instrument" includes negotiable instruments. [Civ. Code, §3104, subd. (b)] California courts also have upheld causes of action for the conversion of corporate stock certificates and the shares represented by the certificates. Bonds also may be the subject of a conversion action.

Three elements required to establish a cause of action for conversion: (1) plaintiff's ownership or right to possession of the property at the time of the alleged conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages.

7. **2nd Cause of Action –** 17 U.S.C. § 102 Copyright protection subsists, in accordance with this title, in the original works of authorship fixed in any tangible medium of expression, now

known or later developed, from which they can be perceived,

reproduced, or otherwise communicated, either directly or with

the aid of a machine or device.

**Copyright # 1-2971746331 - United States Copyright Office**

## FED RC 8 CLAIM

8. Per Rule 8. General Rules of Pleading, Plaintiff owned and

had right to possession of invention for embedding mini speakers

and connecting them to smart devices such as computers and smart

phones. Plaintiff sent invention to Defendants. Defendant's

conversion was done by a wrongful act or disposition of

plaintiff's property. Defendant's interfered with Plaintiff's

property rights.

The Defendants conduct was a substantial factor in causing

Plaintiff's harm. Plaintiff is entitled to relief/damages as a

result of Defendant's misconduct. Plaintiff is seeking

$23,777,000.00 Twenty -three million dollars, seven hundred and

seventy-seven thousand dollars and any other awards/damages the

court sees fit.

## STATEMENT OF FACTS/COUNTS

9. Plaintiff sent Defendant hundreds of emails over a five year

period; pertaining to published patent application #12/659,756

invention and expression of ideas via PowerPoint docs per

Copyright #1-2971746331. Plaintiff also submitted and had

conversations about aforementioned invention with Lori Tabb

and Lori Tabb's Assistant(s) at Creative Artist Agency [herein CAA] CAA handles Defendant/Mattel, Inc. CAA recently set up Mattel movie deals at Sony Pictures. Plaintiff discussed using aforementioned invention et al with Sony Pictures movie executives [E.g. Doug Belgrad & Devon Franklin] and Sony's consumer products division. Plaintiff asserts it's *plausible on it face,* Defendant's converted Plaintiff's idea; esp considering Plaintiff's/Defendants sphere of connected networks. [E.g. Entertainment industry, Entertainment industry consumer products division [*see email from WarnerBros Consumer Products regarding Defendant/Mattel*] Tom Hanks which is developing a "Major Matt Mason" movie with Defendant/Mattel and is also represented by CAA.]

A video demonstration of a working prototype based on Plaintiff's invention; built by Sound ID, a Bluetooth headset company located in Palo Alto, CA and Redwood City, CA was shown to Defendants at or around November 22nd, 2011. The video shows a 10" Hasbro Iron Man action figure with a mini Sound ID Bluetooth speaker embedded with A2-DP Spec [allows for streaming audio] paired with an iPhone. A YouTube of an Iron Man sound effect can be heard coming over the mini Sound ID Bluetooth speaker embedded in the 10" Hasbro Iron Man action figure.

[Email from Andy Atamaniuk, VP of Operations, Sound ID, with a CC to the VP of Engineering, incorporated herein 5/9-25]

---------- Forwarded message ----------
From: **Andy Atamaniuk** <aatamaniuk@soundid.com>
Date: Tue, Nov 22, 2011 at 1:08 PM
Subject: 7 videos of Iron Man

1  To: Jeremiah Balik <angelscamp3d@gmail.com>
   Cc: ashamsoddini@soundid.com

2

3  Jeremiah,

4  I placed 7 videos on an ftp site (the files are very large) of the
5  prototype we produced using our headset as a basis and adding the
   needed extra components.  Ahmad's 10 year old son is in the videos.
6  Sorry for the production quality, this is all we had time to produce
   before the holidays.  If you need something else let me know.

7

8  Happy Thanksgiving.

9  Andy

10 Below are generic instructions to get into our FTP site.

11 ftp://ftp2.soundid.com/mdocs

12
   username:          docusers
13 password:            docs3214

14

15 Prototype built was a first of it's kind and a game changing

16 invention for the entire toy industry. With Plaintiff's application

17 driven toy idea, not only would a toy company generate revenue from a

18 one off toy purchase [E.g. purchase of an action-figure or Barbie];

19 now the toy company could generate top-line revenue from the purchase

20 of audio downloadable content. [E.g. parent purchases 5 sound effects

21 for child's action figure on Apple iTunes or Google Play for $0.99]

22 Plaintiff alleges the former CEO of Sound ID, may have helped create

23 Defendants "Hello Barbie" toy. Defendant's toy requires a highly

24 specific skill set; one that Defendants would not have in house.

25 Forbes April 9th, 2015 "Mattel MAT -5.86% said in a regulatory filing

26 that former Chief Executive Bryan Stockton had been fired,

27 contradicting its January 26 press release in which the toymaker said

28 the executive had resigned. Stockton's "employment was terminated,"

2ND AMENDED COMPLAINT- CONVERSION - 6

1  Mattel said in its annual proxy filing Thursday, noting that the

2  termination was without cause and that he got severance benefits and

3  payments accordingly, under a scenario of "Involuntary Termination."

4  Plaintiff alleges, the cardinal reason Bryan Stockton was fired was

5  due to slumping Barbie sales. Defendant Mattel needed to reinvigorate

6  sales and the Barbie category. NPD Research showed that children were

7  using smart devices in ever increasing amounts. Defendants needed a

8  toy that married smart devices with traditional toys.

9  Plaintiff alleges full conversion took place at or around the time,

10 of the firing of Bryan Stockton. [late 2014]

11 http://fortune.com/2015/01/26/heres-why-mattel-ousted-its-ceo-bryan-

12 stockton/

13 Defendants "Hello Barbie" is solely based on Plaintiff's invention,

14 property, expression of copyrighted material. {*Cavalier v. Random*

15 *House, Inc}* Both have embedded speakers, both use a form of radio

16 frequency, whether WiFi or Bluetooth – both connect to smart devices

17 such as iOS or Android devices. Defendant's use voice interactivity –

18 a future application Plaintiff "claims" in Published Patent

19 #12/659,756. Defendants Christmas 2015 release of "Hello Barbie" is

20 further evidence of conversion, especially given the lead time to

21 design and manufacture toys in China and ship back stateside.

22

23    10.   Plaintiff filed a non-provisional utility patent on

24       19MAR10. Art Unit 3711, Class 446, Sub class 397, Publication

25       Date #: US 2011-0230116 A1, Examiner Alyssa Marie Hylinksi

26       Patent 12/659,756 -"Bluetooth Speaker Embed Toyetic"; was put

27       in abandoned status by the USPTO for "failure to respond to an

28

office action" on or about 24MAY2012. [last status date 08JAN2013] Patent filing receipt hereto attached as Exhibit 1 **[All Exhibits already submitted to Court per original filing and First Amended Complaint. Uploaded on PACER]**

11.   Plaintiff's published Patent method entails embedding mini Bluetooth speakers (E.g. Sound ID to manufacture) inside plush, action-figures, dolls etc. The embedded Bluetooth speaker would be paired with a Bluetooth capable smart device. [E.g. iPad, iPhone, iPod Touch, Droid, Computer etc] The smart device would have a toy company [E.g. Hasbro, Mattel etc] application on it; that is essentially a repository for sayings, talking, sound effects, music and other noises. A child could decide which saying, sound effect, music or noise to be heard over the Bluetooth speaker embedded in the toy. [E.g. A song for Alvin and the Chipmunks plush toy. Transforming sound for a Transformer toy, Robert Downey Jr saying "I am Iron Man" over an Iron Man action figure, Steve Carell telling a bed time story via a GRU/Despicable Me action figure Etc]

The child could also speak into the smart device's microphone – then via the Toy Company application, have his/her voice converted into the toy characters' voice. [E.g. Child speaks phrase into smart device/application and can hear it come out as

Optimus Prime/Transformer or a Chipmunk over the toy] An
additional use of the technology method is language conversion.

12.   A toy company could charge $0.99 for audio downloads or
content for toys in the Bluetooth speaker embed scenario. [Toy
Company is now generating top-line revenue and in the content
business].

13.   Per 35 USC, Plaintiff was the first to file a method that
comprises Bluetooth speakers being embedded in toys. This
idea/invention/method is novel, non-obvious and useful.

14.   Plaintiff was the first to contact the Bluetooth Special
Interest Group. [Bluetooth SIG]. The Bluetooth Special
Interest Group (SIG) is a privately held, not-for-profit trade
association founded in September 1998. The Bluetooth SIG
itself does not make, manufacture, or sell *Bluetooth* enabled
products. The SIG member companies are leaders in the
telecommunications, computing, automotive, music, apparel,
industrial automation, and network industries. SIG members
drive development of *Bluetooth* wireless technology, and
implement and market the technology in their products. The
main tasks for the Bluetooth SIG are to publish *Bluetooth*
specifications, administer the qualification program, protect

the *Bluetooth* trademarks and evangelize *Bluetooth* wireless

technology. The Bluetooth SIG said Plaintiff was the first to

contact them regarding an invention like mine and that they

hoped to see it adopted in toys soon, because it was a very

cool idea. Bluetooth SIG email, hereto attached as Exhibit 2

15.   Plaintiff was the first to contact toy industry

analyst/experts Sean McGowan of Needham Co., and Gerrick

Johnson of BMO Capital. They have been in the industry for 25

years plus and never heard of an idea such as ~~mine~~. [PLAINTIFFS] Sean

McGowan spoke about ~~my~~ [PLAINTIFFS] idea at Engage Expo in Santa Clara, CA

in 2010. Sean McGowan doc, hereto attached as Exhibit 3

16.   When Plaintiff filed; The United States was operating

under a **first to conceive patent system**. This type of system

allowed individuals and or companies to make false

claims.{misattribute} Chris Heatherly of *Disney Consumer*

*Products*, Ben Dermer of *Spin Master* and *Playmates Toy Co.*,

Defendants all made false claims. Disney Consumer Products

[DCP], the largest Toy Company in the world, claimed they had

Plaintiff's idea in their labs for years and were planning to

use Plaintiff's technology method. When asked why DCP never

filed a *non-provisional patent* or at least a *provisional*

*application*, DCP had **no answer**. When asked what kind of mini

from John Barton VP of Thinkway Toys and former Disney

Consumer Products [herein DCP] incorporated herein

 Mr. Barton worked on Toy Story toys with Pixar and Disney.

EXHIBITS/ Emails show Steve Jobs involvement. Patent receipt,

hereto attached as Exhibit 1

[EMAIL 1] From: "Heatherly, Chris"

<Chris.Heatherly@disney.com>

Date: June 14, 2010 7:38:03 PM CDT

To: Jeremiah Balik <shteren.entertainment@gmail.com>, "Calne,

Max" <Max.Calne@disney.com>

Subject: RE: Spin Master/Marvel : "Iron Man 3" Toyline idea /

Desk of Spencer  Baumgarten/ CAA

Jeremiah,

 Again, this is a concept we have had in our labs for years

and others have done. I can't speak for Marvel but we feel

covered at Disney on this. Let us know if the patent issues.

 Best,

Chris

[EMAIL 2] ---------- Forwarded message ----------

From: Richard Keuter <RichardK@spinmaster.com>

Date: Tue, May 18, 2010 at 11:24 AM

Subject: Re: Inventor set up - Bluetooth [Requested documents]

To: Jeremiah Balik <shteren.entertainment@gmail.com>

Cc: Ben Dermer <BenD@spinmaster.com>, Ronnie Frankowski

<Ronnie_Frankowski@spinmaster.com>

Jeremiah,

No problem, I hope to be able to incorporate your idea into

the toys we are working on.  Good luck with the movie and look

forward to seeing more of it further down the road.

Thanks for the info on LHYS, it sounds like a great cause.

Best,

Rick


[EMAIL 3] From: Dani Tauzin <DTauzin@playmatestoys.com>

Date: Wed, Jul 21, 2010 at 6:09 PM

Subject: RE: Playmates Toys | Shteren Ent Proposal

To: Jeremiah Balik <shteren.entertainment@gmail.com>

Concept submission letter attached.  Original will be mailed

for your files.

 Thank you for contacting Playmates Toys.

 Regards,

 Dani Tauzin

Administrative Assistant to the President

Playmates Toys Inc.

dtauzin@playmatestoys.com


[EMAIL 4] ---------- Forwarded message ----------

From: <johnb@thinkwaytoys.com>

Date: Mon, Mar 29, 2010 at 4:44 PM

Subject: Re: Revised Toy Story doc/Thinkway Toys/ Desk of John

Barton

To: Jeremiah Balik <shteren.entertainment@gmail.com>, John

Barton <johnb@thinkwaytoys.com>

I do not think the idea went to patent stage and you should be

fine.

J

Sent from my BlackBerry device on the Rogers Wireless Network


[EMAIL 5] ---------- Forwarded message ----------

From: <johnb@thinkwaytoys.com>

Date: Mon, Mar 29, 2010 at 3:49 PM

Subject: Re: Revised Toy Story doc/Thinkway Toys/ Desk of John

Barton

To: Jeremiah Balik <shteren.entertainment@gmail.com>

Fyi

This was from Steve Jobs who at the time owned Pixar before

selling to Disney.

J

Sent from my BlackBerry device on the Rogers Wireless Network


**19. Precedence of Mayor Rahm Emanuel/Rep Fred Upton Tampering/US**

**Patent and Trademark Office [USPTO]:**

During Plaintiff's campaign work for Mayor Rahm Emanuel, Plaintiff

told him/staffers that Chris Heatherly, then VP of Disney Consumer

Products in Burbank, CA lied via email See Exhibit and was trying to

steal Plaintiff's Application Driven Toy Patent idea [Pub Pat

#12659756] Robert A Iger, CEO of Disney [large Apple stock holder],

is good pals with Mayor Rahm Emanuel. Robert A Iger attended a

fundraiser for Mayor Rahm Emanuel in Hollywood, CA organized by his

brother Ari Emanuel [CEO, of WMW/IMG Entertainment]. After telling

Mayor Emanuel of Chris Heatherly's nefarious activities, shortly

after he was fired. Plaintiff alleges Mayor Rahm Emanuel had

something to do with the firing - additionally; WME/IMG Entertainment

handles toy company Hasbro. Plaintiff further alleges Mayor Rahm

Emanuel Et al had ~~my~~ PLAINTIFF'S patent "jammed" at the US Patent Office.

12659756 was published but never went to issuance. Plaintiff found

out recently, Chris Heatherly is back at The Walt Disney Company,

with the Interactive Group.

20.   Plaintiff alleges Mayor Rahm Emanuel had IP Patent Attorney

Susan Pan of Sughrue Mion, PLLC work with Plaintiff; as to

derail Plaintiff's efforts at the USPTO [United States Patent

& Trademark Office]. Attorney Susan Pan and Plaintiff met for

dinner at or around August 2011 in Chicago [Moe's Cantina in

River North, 155 W. Kinzie St., Chicago, IL 60654]. Susan paid

for dinner and discussed with Plaintiff how impressed she was

on all the progress Plaintiff was making with my Patent - not

only with the USPTO, but in the Toy and Entertainment

industry. Susan wanted to work together and charge Plaintiff

reduced fees. Susan Pan handled some office actions with USPTO

for Plaintiff - IP Attorney Susan Pan is a cardinal reason for

patent never issuing and being abandoned.

www.sughrue.com/span/ On or about 5/24/2012 the USPTO sent

Plaintiff's IP Attorney, Susan Pan, of Sughrue Mion, PLLC at

2ND AMENDED COMPLAINT- CONVERSION - 15

2100 Pennsylvania Avenue, N.W., Suite 800, Washington, DC 20037 an Office Communication stating "Applicant (Plaintiff) failure to timely file a proper reply to the office letter marked on 24MAY2012". Pursuant to Pre-AIA 35 U.S.C. § 102(c); Applicant/Inventor/Plaintiff never intentionally abandoned Invention. Inventor/Plaintiff must intend to dedicate his/her invention to the public (A delay in the application process is not sufficient proof for abandonment) A copy of the USPTO Office Communication, is attached hereto as Exhibit 2

21. Plaintiff met with and or discussed Application Driven Toy idea with every major toy company and every Hollywood/Major studio Consumer Products divisions. [E.g. Disney Consumer Products, WarnerBros Consumer Products, 20th Century Fox, CP, Paramount Pictures CP, Sony Pictures CP, NBC Universal CP, DreamWorks Animation CP] Every toy and major studio consumer products division showed very strong interest in using the idea. Some of Plaintiff's emails state toy company "hopes to use the idea". Plaintiff also corresponded with Lori Tabb, agent at Creative Artist Agency handling Mattel and equivalent at WME Entertainment handling Hasbro. Conversations and emails were very hopeful working with then, the two largest toy companies in the business. [Plaintiff was also promulgating a fully packaged movie project entitled "Angels Camp 3D" – a